UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARISOL V., | ) |
| Plaintiff, | ) No. 20-cv-2822 |
| v. | ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marisol V.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment (dkt. 26) is GRANTED and Defendant's motion for summary judgment (dkt. 31) is DENIED; the Court hereby remands this matter for further proceedings.

**1.      Social Security Regulations and Standard of Review**

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex*

---

[1]     In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]     The Court has construed "Plaintiff's Memorandum in Support of Summary Remand" (dkt. 26) as a motion for summary judgment.

*rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

**2.  Background**

Plaintiff has a long history of mental health issues. She was diagnosed with anxiety and depression around 2009 after her primary care doctor suggested she see a psychiatrist. (Administrative Record ("R.") 65.) She attempted suicide in 2010 and again in May 2012. (R. 321, 831, 835-36, 964-67, 1544-45, 1555-57.) She has received outpatient treatment at the DuPage County Health Department consistently since 2014. (R. 709-21, 737-810, 816-29, 831-914, 998-1007, 1498-1541.) The medical record details how Plaintiff's mood fluctuates and her anxiety and depression cause panic attacks, suicidal thoughts, irritability, headaches, decreased energy and motivation, impaired memory, difficulty concentrating, difficulty sleeping, and isolative behavior. (R. 654-55, 669-70, 709-21, 764-67, 789-92, 795-98, 803, 806, 816-29, 863, 871, 1003-06, 1498-1501, 1503, 1531, 1536-40.) Additionally, Plaintiff testified that when she gets mad, upset, or very worried she has numbness in her left arm and shortness of breath. (R. 69-70.) Plaintiff has presented to the emergency room on several occasions after panic attacks and other anxiety reactions. (R. 474-94, 921-23, 932-35, 952-54, 983-85.) Plaintiff has been treated with a very wide variety of prescriptions for her mental health, with little success, as her major depressive disorder is classified as a "resistant" type. (R. 670, 694, 713, 746, 757, 766, 779, 803, 820, 1006, 1040, 1516, 1534, 1536, 1539.) Plaintiff testified she continues to have thoughts of suicide. (R. 72-73.)

Plaintiff has suffered from asthma since childhood, and been treated with various asthma medications since then. (R. 310, 654-60, 657, 660, 687, 1016, 1052, 1092-95.) She noted she has had shortness of breath since she was little because of asthma, but it is worse now because of her depression. (R. 70.) She has gone to the emergency room on several occasions for asthma attacks or exacerbations. (R. 388-402, 444-72, 478, 561-74, 916-19.)

Since 2016, Plaintiff has also been treated for intermittent vertigo that occurs with moving her

head to the right, sometimes with nausea, tinnitus, or numbness of her scalp. (R. 661-62, 1041-42, 1045-46, 1255-58, 1522-23.) 2018 imaging of her brain and internal auditory canals was unremarkable. (R. 1077-78.)

Plaintiff testified she was absent a lot from her last job because she did not want to go in the mornings when she felt very tired or depressed or had vertigo. (R. 73.) She was absent at other times because of asthma attacks, which also left her feeling very tired. (*Id*.) Plaintiff testified to absenteeism at a rate of about a week per month of work on average. (R. 73-74.) She also testified she missed 53 days in one year when she was only supposed to miss eight maximum. (*Id*.) The ALJ asked no follow-up questions in response to Plaintiff's testimony about her absenteeism.

On February 21, 2017, Plaintiff applied for Disability Insurance Benefits. (R. 36.) Plaintiff's claim was denied initially and upon reconsideration. (R. 87-98, 100-15.) Upon timely request, a January 7, 2019 Administrative Hearing was held. (R. 56-86.) Plaintiff, represented by counsel, testified at the hearing, as did a Vocational Expert ("VE"). (R. 58-86.) Subsequently, Administrative Law Judge ("ALJ") Kimberly S. Cromer issued an unfavorable decision on March 18, 2019. (R. 36-47.) Plaintiff requested and was denied Appeals Council review (R. 1-4), causing the ALJ's decision to constitute the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g); *see, also,* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Plaintiff, through counsel, filed the instant action on May 11, 2020, seeking review of the Commissioner's decision. (Dkt. 1.)

**3.     The ALJ's Decision**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 1, 2016. (R. 38.) At Step 2, the ALJ found that Plaintiff had the severe impairments of depression; anxiety; asthma; and overweight. (*Id*.) The ALJ determined that Plaintiff's vertigo; history of breast cyst removal (no malignancy); history of gastric ulcer, gastritis, and

esophagitis; and hypertension were non-severe impairments. (R. 38-39.) At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 39-41.) Before Step 4, the ALJ found that Plaintiff had the residual functional capacity ("RFC") for a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes, or scaffolds; no work at unprotected heights or work around hazardous machinery; no commercial driving; avoid concentrated exposure to cold, heat, humidity, wetness, pulmonary irritants, loud noise at construction level; simple routine tasks; only occasional interaction with the public, coworkers, and supervisors; no fast-paced production such as assembly line or work where the machine sets the pace; work is of a variable rate; only occasional decision making; no strict production, hourly requirements; end of day work goals; and no tandem work. (R. 41-45.) At Step 4, the ALJ found Plaintiff unable to perform her past relevant work as an electronic assembler. (R. 45.) At Step Five, however, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. (R. 46.) Because of these determinations, the ALJ found Plaintiff not disabled under the Act. (R. 47.)

**4.      Discussion**

Plaintiff raises two issues, *inter alia*, with the ALJ's opinion: (1) that the ALJ erred in assessing Plaintiff's absenteeism, leading to a flawed RFC assessment, and (2) that the ALJ inappropriately assessed Plaintiff's subjective statements. The Court agrees, and remands on both these bases; the Court declines to address the other alleged bases of error in the ALJ's decision.

**4.1     The ALJ Inadequately and Incorrectly Assessed Plaintiff's Absenteeism**

Plaintiff alleges the ALJ did not adequately consider her absenteeism and, thus, Plaintiff's RFC assessment was flawed. The Court agrees.

At the Administrative Hearing in this matter, Plaintiff testified regarding her absences from

work. Plaintiff testified she was absent a lot from her last job because she did not want to go in the mornings when she felt very tired or depressed or had vertigo. (R. 73.) She was absent at other times because of asthma attacks, which also left her feeling very tired. (*Id*.) Plaintiff testified to absenteeism at a rate of about a week per month of work on average. (R. 73-74.) She also testified she missed 53 days in one year when she was only supposed to miss eight maximum. (*Id*.) The ALJ asked no follow-up questions in response to Plaintiff's testimony about her absenteeism.

At the same Administrative Hearing, the VE testified that if an individual were distracted for 20% or more of the workday, that person would be terminated. (R. 84.) Similarly, the VE testified that two or more absences (including coming in late, leaving early, calling off a shift) in a 30-day period would cause an individual to be unemployable. (R. 84-85.)

In her decision, the ALJ appears to have misinterpreted Plaintiff's testimony concerning her absences. The ALJ wrote that Plaintiff "would miss work if she had an asthma attack" or due to related issues after an attack; and "she would miss a week per month due to her asthma." (R. 44.) The ALJ recorded how Plaintiff testified that "one year [] she missed 53 days of work when she was only allowed to miss 8 days." (*Id*.) The ALJ's decision notes that Plaintiff testified she was terminated from her last job due to absenteeism.[3] (R. 43.) The ALJ found that "medical evidence of record did not substantiate this level" of absenteeism due to asthma, "but there are some records of emergency room treatment."[4] The ALJ then listed Plaintiff's asthma medications. (R. 44.)

The Administrative Record does not reflect whether Plaintiff would visit a physician every

---

[3] There appears to be a typographical error in the hearing transcript. The transcript indicates Plaintiff testified to working at her prior job for 11 years, then "they just laughing because they said I was absent a lot." (R. 73.) The ALJ, who was present at the hearing, wrote in his decision that Plaintiff testified she was released from her job for missing work (R. 43), so the Court presumes, based on the ALJ's decision, that "laughing" was really "let me go" or some similar reference to termination. Neither party's briefs offer illumination on the issue of Plaintiff's separation from her most recent job, and the Court has no reason to disbelieve the ALJ regarding the substance of Plaintiff's testimony concerning the same.

[4] Curiously, the ER visit the ALJ cited here was for a panic attack where Plaintiff also presented with left arm numbness; no respiratory signs or symptoms were involved. (R. 983-85.)

5

time she missed a day of work (nor would the Court have expected her to). However, the Court is not certain an individual's medical records would be able to substantiate work absences unless a physician specifically noted it, a fact which is tangential to their actual treatment of a patient's symptoms. Plaintiff's testimony as to 53 absences in one year is a striking amount of absences to the Court, but it is more striking the ALJ failed to develop the record by inquiring further about these absences, determining whether Plaintiff's job accommodated these absences (*i.e.*, whether it was "sheltered work," *see Johnson v. Chater*, 969 F. Supp. 493, 501 (N.D. Ill. 1997)), or requesting employment records about the same.

Next, the ALJ failed to recognize that Plaintiff testified her absences were most often due to her mental health symptoms. It appears the ALJ did not doubt the veracity of the report of 53 absences, as she looked into whether the record demonstrated a commensurate level of severity *as to Plaintiff's asthma*. As the ALJ failed to analyze Plaintiff's absences as to her mental health symptoms, there is nothing in the ALJ's decision disputing Plaintiff's claims she missed work due to her mental health symptoms and vertigo. There is no logical bridge connecting (or not) Plaintiff's absenteeism to her mental health symptoms. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) ("we cannot uphold an administrative decision that fails to mention highly pertinent evidence, or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome.") (internal citation omitted).

Social Security Ruling 96-8p(1) requires an ALJ to discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Here, the ALJ failed to adequately consider all the relevant evidence as to whether Plaintiff could sustain full-time work on an ongoing basis despite absences relating to her condition as a whole. This

6

is particularly significant because the only undisputed evidence of record (*i.e.*, Plaintiff's testimony) as to Plaintiff's absences indicates absences *far* in excess of the two absences in a 30-day period the VE testified would cause an individual to be unemployable. (R. 84-85.) Thus, the Court remands this matter so the ALJ may fully analyze Plaintiff's absences. As the burden is ultimately on Plaintiff to prove the extent of her disability, she may be well-served to submit her employment records from her job at Laird. *See* 42 U.S.C. § 423(d)(5)(A) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")

### 4.2 The ALJ Failed to Consider the Physical Manifestations of Plaintiff's Mental Conditions

Plaintiff also alleges the ALJ erred in several ways when addressing her subjective allegations. Most persuasive among those ways is the allegation the ALJ failed to consider the physical manifestations that stemmed from her mental conditions.

An ALJ must not selectively analyze the evidence; instead, the ALJ "must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position" *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000); *Hardy v. Berryhill*, 908 F.3d 309, 312 (7th Cir. 2018) ("ALJ must grapple with lines of evidence that are contrary to her conclusion"). The Court believes the ALJ's omission of any analysis related to the physical manifestations of Plaintiff's anxiety and panic attacks is one specific line of subjective evidence, among others, that leaves the ALJ's decision unsupported by substantial evidence.

Plaintiff testified that when she gets mad, upset, or very worried she has numbness in her left arm and shortness of breath. (R. 69-70.) Plaintiff also testified that her depression causes her shortness of breath and asthma to be worse. (R. 70.) Similarly, Plaintiff reported to medical providers that she experiences arm numbness, shakiness, and headaches when she is anxious. (R. 712, 825, 983.) While

the ALJ noted Plaintiff's testimony that she has left arm numbness and shortness of breath when she gets anxious, the ALJ also noted that the record did not include any clinical findings supporting left arm limitation. (R. 43.) While that is true, the Court agrees with Plaintiff that the ALJ missed the point: Plaintiff did not allege limitations in using her left arm, but rather that her anxiety and panic attacks are severe and involve physical manifestations. Plaintiff's reports about these symptoms are consistent and extend across the period in question, and no doctor doubted her reports. (*See* R. 69-70, 712, 825, 921, 983.) If the ALJ relied on a lack of physical arm limitations to discount the severity of Plaintiff's anxiety (Court cannot tell if she did, which is a problem), the ALJ got the import of the medical reports backwards. However, regardless of the adequacy of the analysis of Plaintiff's arm limitations, the ALJ also failed to address Plaintiff's reports that her anxiety resulted in shortness of breath, headaches, or shakiness. In the Court's view, the ALJ did not adequately consider the physical manifestations of Plaintiff's anxiety as it relates to the severity of her conditions, in that she did not address whether she found the medical evidence to be consistent with those allegations. The ALJ's decision on this aspect of Plaintiff's claim leaves a void the Court cannot call a logical bridge. The Court must also remand on this basis.

**5.    Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. The Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff other than those discussed herein. Plaintiff's motion for summary judgment (dkt. 26) is GRANTED and Defendant's motion for summary judgment (dkt. 31) is DENIED; the Court hereby remands this matter for further proceedings.

Entered: March 22, 2022

_____
Susan E. Cox,
United States Magistrate Judge

8